## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| _____ | : | |
| In re: Subramanyam Vedam, | : | Docket Number |
| | : | 25-_____ |
| Movant/Petitioner. | : | |
| _____ | : | |

**APPLICATION PURSUANT TO 28 U.S.C. § 2244 FOR AN ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SUCCESSIVE APPLICATION FOR RELIEF UNDER 28 U.S.C. § 2254 AND CONSOLIDATED MEMORANDUM IN SUPPORT**

Subramanyam Vedam moves for an order pursuant to 28 U.S.C. § 2244 authorizing the United States District Court for the Middle District of Pennsylvania to consider a successive petition for habeas corpus relief. A copy of the proposed successive habeas petition is attached to this Application as Exhibit A.[1]

Evidence disclosed by the prosecution on January 10, 2024, that had been withheld from Vedam for over four decades, shows that he is demonstrably innocent of the murder for which he has been incarcerated. This evidence was withheld from him in violation of the Due Process Clause of the Fourteenth Amendment. He

---

[1] Pursuant to Local Rule 22.5(a), Vedam opts to not use the Court's form. All information required by the form is included herein. The state court transcripts are referred to as "Notes of Testimony" and are cited as NT, followed by the date of the proceeding and a page reference. All emphasis is supplied. The documents that are required to be filed with this *Application* pursuant to Local Rule 22.5(a), are contained in the accompanying Bates-Stamped Appendix.

therefore meets the criteria for the district court's consideration of his proposed successive Petition and ultimately habeas corpus relief.

## I.    A Stay of the Habeas Proceedings Will be Sought in Order to Permit Exhaustion of the Ground Presented in the Nascent Habeas Petition

Because there is arguably an available state court remedy by which he can present the merits of the claim contained in the nascent successive habeas corpus petition, Vedam is required to exhaust the claim in state court. *See* 28 U.S.C. § 2254(c). To accomplish exhaustion, Vedam has presented the ground in a post-conviction petition that is pending in the Court of Common Pleas, Centre County, Pennsylvania. A hearing on the merits of the claim is scheduled for February 6 and 7, 2025 before the Honorable Jonathan Grine.

Despite exhaustion not yet being complete, Vedam files the instant Application at this time in order to comply with the applicable limitations period for the filing of a successive habeas petition. *See* 28 U.S.C. §§ 2244(d)(1)(B) & (D).[2] Accordingly, should this Court grant the instant Application, Petitioner will move to stay the habeas proceedings until the state post-conviction proceedings, and any appeal, are complete. The stay will permit such exhaustion of the claim in the state courts. *See* 28 U.S.C. § 2254(b)(1)(A); *Cf.*, *Rhines v. Weber*, 544 U.S. 269 (2005)

---

[2] As explained below, the nascent Petition is timely filed.

(permitting a stay of a habeas proceeding to ensure compliance with the ADEPA limitations period while exhaustion is underway).

## II.    Relevant Procedural Background

Vedam is a prisoner incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania and is in the custody of the Superintendent John Rivello. He is serving a sentence of life imprisonment without parole following his 1988 conviction for first-degree murder in the Court of Common Pleas for Centre County, Pennsylvania (docket number CP-14-CR-382-1982), relating to the death of Thomas Kinser.

Kinser disappeared on December 14, 1980 and his body was found on September 27, 1981. Vedam and Kinser knew each other and Vedam was alleged to have been the last known person to see him alive. The police focused on Vedam as a suspect. The Commonwealth charged Vedam with the murder of Mr. Kinser on June 28, 1982. He has been held in continuous custody since.

### A.    State Court Trial and Appellate Proceedings

Vedam was tried twice. His first trial was conducted in 1983 and he was convicted of first-degree murder. On direct appeal, the Superior Court of Pennsylvania reversed the conviction and ordered a new trial based on a number of evidentiary rulings, none of which are relevant to this Application. *Commonwealth v. Vedam*, 502 A.2d 1383 (Pa. Super. 1985).

Vedam was re-tried in 1988 and was again convicted by a jury. A direct appeal to the Superior Court of Pennsylvania was filed and denied. *Commonwealth v. Vedam*, 216 Harrisburg 1990 (Pa. Super. Sept. 11, 1991). Leave to appeal to the Pennsylvania Supreme Court was filed and denied. *Commonwealth v. Vedam*, 318 M.D. 1991; 613 A.2d 559 (Pa. Aug. 19, 1992). None of the issues addressed in that appeal are relevant to this Application.

Both trials were presided over by the Honorable Charles C. Brown, Jr. The Commonwealth was represented at each trial by Centre County District Attorney Ray Gricar.[3] Vedam was represented by Attorney Amos Goodall at his first trial and by Amos Goodall and John Rogers Carroll at his second trial and on direct appeal.

## B.    First Habeas Corpus Petition

Following a round of state post-conviction litigation, Vedam filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254. *Vedam v. Kyler*, 4:00-cv-1496. He raised a single ground: that his conviction violated due process of law

---

[3] Much mystery surrounds Mr. Gricar. He went missing on April 15, 2005, while still in office, and has not been heard from or seen since. *See* Richard Zitrin, *Ray Gricar, a Pa. district attorney, went for a drive 17 years ago. He hasn't been seen since*, Penn Live.Com, https://www.pennlive.com/news/2022/07/ray-gricar-a-pa-district-attorney-went-for-a-drive-17-years-ago-he-hasnt-been-seen-since.html (July 11, 2022) (last visited December 28, 2024).

as it was based on insufficient evidence. A copy of the first habeas corpus petition is attached as Exhibit B.

The District Court (Hon. Malcolm M. Muir) denied the Petition and a Certificate of Appealability (COA) by Order dated May 18, 2001, attached as Exhibit C. Docket entries for proceedings in the District Court are attached as Exhibit D.

A notice of appeal to this Court was filed. *Vedam v. Kyler*, 01-2478 (3d Cir.). This Court denied a COA by order dated September 6, 2002, attached as Exhibit E.[4] Docket entries for proceedings in this Court are attached as Exhibit F.

### C.    First Application Pursuant to 28 U.S.C. § 2244

Vedam filed a prior application pursuant to 28 U.S.C. § 2244 on March 21, 2013 docketed as *In re: Vedam*, 13-1797 (3d Cir.). A copy of the application is

---

[4] The Order denying COA stated:

> ORDER (Alito, Authoring Judge, McKee, and Aldisert, Circuit Judges) When a claim of insufficient evidence to sustain a conviction at trial is raised, a certificate of appealability will only issue if, after considering all the evidence introduced at trial in a light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 321 (1979). Appellant has failed to make this showing. Accordingly, because Appellant cannot make a substantial showing of the denial of a constitutional right, the request for a certificate of appealability is denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

attached as Exhibit G. In it, Vedam contended that he had not been able to raise any claims of ineffectiveness of trial counsel because the same lawyer represented him at trial, direct appeal and in state post-conviction proceedings. He sought authorization to file a second habeas petition to pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), in order to raise claims of ineffectiveness of trial counsel for the first time. The proposed second habeas petition (attached here as Exhibit H) that accompanied the application, alleged the following three claims of trial counsel ineffectiveness:

> 1.     Trial counsel was ineffective for failing to effectively cross examine the Commonwealth's key witness regarding his false testimony about his criminal history and *crimen falsi* even though that information was readily obtainable by diligent counsel and the verdict was dependent upon that witness's testimony and credibility.

> 2.     Trial counsel was ineffective in failing to call a Penn State professor of entomology, an expert retained by the investigating police, to testify that the conclusion detailed in a forensic examination report directly conflicted with the Commonwealth's prosecution theory. This omission was compounded by trial counsel's failure to challenge the District Attorney's misleading and emotional closing argument belying its own expert's findings.

> 3.     Failure to present plea offer to defendant or respond to prosecution in timely manner. Counsel failed to respond to prosecutor's plea offer resulting in withdrawal of a favorable sentence offer. A second offer was never communicated to defendant by counsel.

This Court denied the application by Order of March 28, 2013 (Ambro, Smith and Chagares, JJ), attached as Exhibit I.[5] Vedam was represented in that application by Attorney Andrew J. Shubin. Docket entries for proceedings in this Court as attached as Exhibit J.

### D.    Rule 60 Motion Pending in the United States District Court for the Middle District of Pennsylvania

On March 21, 2024 Vedam filed a *Motion for Relief from Final Order and Judgment Pursuant to Federal Rules of Civil Procedure 60* and a *Memorandum in Support* in the United States District Court for the Middle District of Pennsylvania. *See Vedam v. Kyler*, 4:00-cv-1496 (M.D. Pa.) (ECF #31 and 35) (Hon. Malachy E. Mannion). As of June 7, 2024, this Rule 60 Motion has been fully briefed. There has been no further action by the District Court.[6] A copy of the *Rule 60 Motion* and *Brief*

---

[5] This Court's Order stated:

> The foregoing application to file a second or successive petition pursuant to 28 U.S.C. § 2254 is denied. Vedam has failed to make a prima facie showing that his claim relies on a "new rule of constitutional law" or previously unavailable factual predicates. See 28 U.S.C. § 2244(b)(2); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1319-20 (2012) (noting that its ruling was "equitable," not "constitutional"); *Buenrostro v. United States*, 697 F.3d 1137, 1139 (9th Cir. 2012) (precedential order); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).

[6] In his first habeas proceedings, Vedam argued that the evidence against him was insufficient to sustain his conviction pursuant to the Due Process Clause of the Fourteenth Amendment. He has alleged in the Rule 60 proceedings that the prosecution's withholding of the skull measurements, while at the same time arguing

*in Support* are attached as Exhibit K. Exhibit D contains the docket entries for the Rule 60 proceedings.

## III.    The Instant Application

### A.    Trial Facts Relevant to this Application

During the second trial, the Commonwealth presented Daniel O'Connell, an incentivized witness who testified that he stole a .25 caliber pistol from his father and then sold the weapon to Vedam about a week before Kinser's disappearance.[7] The Commonwealth also introduced evidence that a .25 caliber bullet was found in proximity to Kinser's remains. Based on this evidence, the Commonwealth argued

---

that the evidence was sufficient, constituted a fraud on the court. Whether the January 2024 disclosures give rise to a new habeas claim that would not be cognizable in a Rule 60 motion, or constitute a fraud on the court that would be cognizable, is a close question. *Gonzalez v. Crosby*, 545 U.S. 524 (2005). With the filing of the instant Application, Vedam ensures that the constitutional impact of the suppression of the skull measurements will be heard either as a fraud on the court (Rule 60 motion), or as a properly filed successive habeas petition.

[7] Notably, O'Connell left State College in October 1981, after learning that Kinser's body had been recovered. NT 2/23/1988, 86-87. O'Connell returned a few months later. Upon his return, the police questioned him regarding the burglary of a local retail establishment. During that questioning, the officers threatened O'Connell with prosecution of a first-degree felony burglary charge unless he gave information regarding Vedam's alleged involvement in the Kinser case. At that point, O'Connell informed the police that he had sold a .25 caliber gun to Vedam in December of 1980 and that the day of the sale Vedam had fired the gun in the woods behind a fast-food restaurant where O'Connell worked. NT 2/23/1988, 78-80.

that Vedam used the .25 caliber handgun to murder Kinser on December 14, 1980, after Vedam and Kinser had purchased LSD from a dealer in Lewistown.

The Commonwealth steadfastly maintained that Kinser was killed by a .25 caliber projectile fired from the handgun. In its opening statement, DA Gricar stated that Vedam bought a .25 caliber handgun from O'Connell and then used it to kill Kinser on December 14, 1980, the day Kinser disappeared. Gricar went so far as to tell the jury during his opening statement that the police "knew the murder weapon was a .25 semiautomatic." NT 2/22/1988, 46. In addition to O'Connell's testimony, the Commonwealth based its assertion that Kinser was killed with a .25 caliber weapon on ballistics evidence, testified to by FBI Agent William Albrecht and Medical Examiner, Thomas J. Magnani, M.D.

Dr. Magnani did not provide a precise measurement of the hole in the top of Kinser's skull, as he only used a plastic ruler to measure it. He did not use calipers to measure the wound. Calipers would have provided a more precise measurement. NT 2/22/1988, 109 ("Q: Do you feel comfortable with your original measurement or do you want to change it? A: No, sir. I feel comfortable because I didn't measure it accurately. I didn't use calipers, and I used a plastic ruler, as you see right there. ... this is a fairly close approximation but by no means is it as good as getting calipers and very, very accurate instruments to measure the diameters.").

He also testified that a fired projectile was found with Kinser's remains during the autopsy. NT 2/22/1988, 78. Dr. Magnani also made an obvious point – one that is at the core of the instant Application: the bullet that caused the fatal wound could not have been larger than the size of the resulting hole in the top of Kinser's skull:

> Q:    Would you say that one basic fact you could say is for sure, and that is, that the size of the bullet cannot be larger than the hole?
> A:    That's absolutely right, yes.

*Id.,* 99-100.

This projectile and Kinser's skull were later sent to FBI Special Agent Albrecht, a ballistics expert, who testified that the cartridge found with Kinser's remains was .25 caliber. *Id.*, 104. However, neither Agent Albrecht nor the Commonwealth provided measurements of the wound at the top of Kinser's skull. Rather, Albrecht testified consistently with an October 21, 1981, two-page FBI Report[8] in which he opined that the size of the wound on top of the skull was "not inconsistent" with the recovered .25 caliber projectile.

> Q:    Did you measure the size of that particular hole at the top of the skull?
> A:    Yes.
> Q:    And are you familiar with the size of a standard .25 auto round of ammunition?
> A:    Yes.
> Q:    Did you find anything inconsistent between those two measurements?
> A:    In my opinion, no.

---

[8] This two-page Report was provided to the defense in pre-trial discovery.

NT 2/23/1988, 114.

Notably missing from Albrecht's testimony, his October 21, 1981 Report or anywhere else in the materials produced pre-trial or before January 10, 2024, was any mention that he used a caliper to measure the hole in the skull or any precise measurements of the wound at the top of the skull. Given the precise nature of their measurements, it is reasonable to believe that the FBI would have utilized such an instrument. In either event, the only information the jury heard about the size of the wound came from Dr. Magnani's measurements made with a plastic ruler and Albrecht's testimony that the wound was not inconsistent with a .25 caliber projectile.

The defense challenged the Commonwealth's theory that the wound was caused by a .25 caliber handgun. In closing, it argued that a .25 caliber bullet would have been too large to have caused the wound. It argued instead that a .22 caliber bullet would have been small enough to have caused the wound. It supported this theory with the fact that several .22 caliber shells were also discovered in close proximity to where Kinser's body was found. NT 2/24/1988, 127, 128, 136.

### B.    The Disclosures Leading to this Application

For years following his conviction, Vedam sought access to the complete file of the Centre County District Attorney's Office regarding his case, but the original prosecutor, Ray Gricar, refused, without explanation, to permit such an inspection.

Gricar's successors, Michael Madeira and Stacy Parks Miller, also refused efforts by counsel to review the files.

Finally, on March 18 and May 24, 2022, the current District Attorney for Centre County, Bernard Cantorna, allowed Vedam's attorney to inspect the full files maintained by the Centre County District Attorney's Office.[9] After selecting voluminous documents from the file, they were delivered to counsel on July 26, 2022.

The July 2022 production included a handwritten note containing purported measurements made by the FBI of the hole in the skull:



The author of this handwritten note that was maintained in the prosecution's file was not identified in the file. Nonetheless, its significance is clear: the hole was too small to have been caused by a .25 caliber projectile and the prosecution knew this. Vedam pled this *Brady v. Maryland*, 373 U.S. 83 (1963) claim in an amendment to his pending state court Post-Conviction Relief Act Petition filed on October 13, 2023.

---

[9] The inspection was conducted by Attorney Balachandran, who is an Associate Professor of Clinical Law and the Director of the Criminal Appellate & Post-Conviction Services Clinic at Penn State Dickinson Law.

The Commonwealth moved to dismiss Petitioner's March 17, 2023 PCRA

Petition and the October 13, 2023 Amendment to the Petition.

Concurrently with the Commonwealth's motion to dismiss, on January 10,

2024, the Commonwealth provided to defense counsel the **full** FBI Report generated

with respect to Kinser's disappearance and death. This 180-page report contains a

set of Albrecht's bench notes as follows:



This handwritten bench note shows that the FBI measured the skull hole as "≈ .22-

.25" inches, in other words exactly what is reflected in the notes contained in the DA

file. Likewise, another portion of the notes in the FBI's file indicates that the bullet

that the Commonwealth claimed was the bullet found in the sinkhole with Kinser's body (Q1) measured ".240-.273," which again is larger than the size of the wound as reflected in Albrecht's bench notes.

Thus, the FBI's precise measurements of the hole in Kinser's skull exonerate Vedam. When the size of a .25 caliber projectile is compared with the size of the entry wound at the top of Kinser's skull, no reasonable factfinder could have found Vedam guilty of the murder. Indeed, the withheld measurements would have completely undermined Agent Albrecht's conclusion that there was "nothing inconsistent" between the measurements of the skull wound and the .25 caliber bullet.[10] That, in turn, would have shown that Kinser was not killed by a .25 caliber handgun and, therefore, was not killed by Vedam, since the Commonwealth theory of the case was that Vedam used a .25 caliber handgun that O'Connell sold to him,[11] and there was no other evidence linking Vedam to any other handgun. Further, the handwritten note in the District Attorney's file contains the same information (albeit,

---

[10] While difficult to read, SA Albrecht's bench notes qualify this opinion that there is nothing "inconsistent" between the measurements and a .25 caliber bullet when "account (sic) for shrinkage." Petitioner has engaged a nationally known forensic anthropologist, Dr. Ann Ross, who explains in her report submitted to the state courts, that with the exception of burning, bones do not shrink over time.

[11] The murder weapon was purportedly never recovered and none was produced pre-trial, at trial or since.

without being attributed to a specific author) and shows that the prosecution knew about the actual measurements and the impossibility of its theory.

Because of the suppression tactics of the former Centre County District Attorney, Vedam's counsel did not learn about the FBI's measurements until almost 36 years after Vedam had been convicted and more than 22 years after the termination of Vedam's first *habeas* petition.

Thus, whereas at trial, the prosecution presented evidence that the hole in Kinser's skull was only measured with a plastic ruler, and that thus, no "precise" measurements were testified to by Magnani or otherwise disclosed, the FBI file contained the actual measurements of the bullet hole in the deceased's skull. These measurements presumably were not taken with a plastic ruler, but with a set of calipers. Those measurements confirm that the hole in Mr. Kinser's skull was too small to have been caused by a .25 caliber bullet. Yet, the prosecution's theory was that Vedam shot Kinser with a .25 caliber weapon and its entire case was built on Vedam's possession of a .25 caliber handgun, including how he came to allegedly possess it. While the parties argued at trial as to whether the hole in the victim's skull could have been made by a .25 caliber projectile, the actual and precise measurements were neither disclosed nor mentioned by the prosecutor on the record. Instead, the FBI analyst who performed the measurements simply opined that the hole in the skull was "consistent" with a .25 caliber projectile. The recent disclosures

show that the hole was not consistent, but was in fact too small to have been caused by the weapon attributed to Vedam.

As discussed further below, Vedam meets the requirements for a successive petition that should be considered by the district court. The centerpiece of the prosecution's trial theory was that the death was caused by a .25 caliber handgun, and it presented a witness who testified to having sold such a weapon to Vedam before the victim's disappearance. Yet, we now know as a fact that the death was caused by a different caliber projectile.

### C.    Vedam Meets the Criteria for the Filing of a Successive Habeas Corpus Petition

This Court has recently reiterated the criteria for litigating a second petition for habeas corpus. *In re: Rosado*, 7 F.4th 152, 156 (3d Cir. 2021) notes that this Court acts as a gate keeper. Before a prisoner may "even file [a successive petition] in district court, he must get the court of appeals' permission. § 2244(b)(3)(A). We are AEDPA's gatekeepers." Before this Court "opens the gate, we must check that the prisoner has prima facie shown two things under § 2244(b)." *Id.*

**First,** he must make a prima facie showing that he meets § 2244(b)(1), which precludes the litigation of any ground that was litigated in a prior habeas corpus petition. As shown, none of the grounds presented in his first habeas petition or in his first 2244 petition are sought to be presented here. The due process claim that is presented in the proposed habeas petition (Exhibit A) only came into existence with

the January 10, 2024 disclosure of the FBI measurements and the full FBI report.

Therefore, there could not have been a similar *Brady v. Maryland*, 363 U.S. 73

(1963) presented in any earlier federal pleading.

**Second,** Vedam must make a prima facie showing that he meets the

requirements of § 2244(b)(2)(B)(i)&(ii)[12] which permits consideration of a second

petition if:

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Vedam meets this section.

The factual predicate for the claim was withheld for over four decades until

its January 2024 disclosure. No degree of diligence could have resulted in securing

this information sooner. The United States Supreme Court has made clear that "a

rule thus declaring '**prosecutor may hide, defendant must seek**,' is not tenable in

a system constitutionally bound to accord defendants due process." *Banks v. Dretke*,

540 U.S. 668, 696 (2004). Therefore, the prosecution's "duty under *Brady* is

**absolute** -- it does not depend on defense counsel's actions." *Dennis v. Secretary,*

---

[12] *Rosado* addressed an arguable new rule of constitutional law that was retroactively applied under (B)(2)(A).

*Pa. Dep't of Corrections*, 834 F.3d 263, 290 (3d Cir. 2016) (*en banc*) (*citing United States v. Agurs*, 427 U.S. 97, 107 (1976)).

And, when viewed against the "evidence as a whole" Vedam establishes that but for the constitutional error, *i.e.* the violation of due process of law that arose from the non-disclosure of this exonerating evidence, "no reasonable factfinder would have found the applicant guilty of the underlying offense."  This is so because the case against Vedam was purely circumstantial and the lynchpin of the prosecution's presentation was that Kinser was killed with a .25 caliber weapon sold to Vedam by O'Connell. The newly disclosed information proves conclusively that Kinser was not shot with a .25 caliber projectile.

Finally, this Court's gatekeeper function can include an assessment of whether the proposed successive petition is timely under AEDPA § 2244(d). *Rosado*, 7 F.4th at 156-157 (holding that the Court "may" consider whether the proposed petition would be timely under § 2244(d)(1)). Here, Vedam uses the January 10, 2024 disclosure of FBI measurements as the trigger date for the limitations period under Section 2244(d)(1)(B)&(D), which hold:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Thus, should this Court wish to consider the timeliness of the proposed petition, the calculation is simple. The material underlying the ground for relief presented in the proposed second petition is filed within one year of January 10, 2024, "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States" was removed, and "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

### Conclusion

In sum, Vedam has made a prima facie showing that he wishes to present a new ground for relief, the factual predicate of which could not have been discovered earlier than January 10, 2024. This predicate shows that but for the constitutional violation, no reasonable factfinder would have found him guilty. Or, put in other words, if the measurements and the FBI report had been disclosed, no reasonable juror would have found that Kinser was killed with a .25 caliber handgun.

WHEREFORE, Vedam respectfully requests that this Court issue an order pursuant to 28 U.S.C. § 2244(b)(2) & (3) authorizing the United States District Court for the Middle District of Pennsylvania to consider Vedam's successive habeas petition (Exhibit A).

Respectfully Submitted,

/s/ Michael Wiseman

Wiseman, Schwartz & Cioschi, LLP
718 Arch Street, Suite 701 North
Philadelphia, PA 19106
215-450-0903
wiseman@wisemanschwartz.com
Signing for All Counsel
Admitted to the Bar of this Court

Tasha Nankerville
tnankerville@barley.com
David J. Freedman
dfreedman@barley.com
Barley Snyder, LLP
126 East King Street
Lancaster, PA 17602
717-299-5201
Admitted to the Bar of this Court

Gopal Balachandran
Associate Professor of Clinical Law
Director, Criminal Appellate & Post-Conviction Services Clinic
Director, Externships Program
Penn State Dickinson Law
310 Lewis Katz Building
University Park, PA 16802
gzb39@psu.edu
Admission Pending

## Certificate of Service

I, Michael Wiseman, hereby certify that on this 8th day of January 2025 I served a copy of the foregoing and accompanying attachments upon the following persons by email:

Centre County District Attorney's Office
Joshua Andrews
jandrews@centreda.org
Matthew Metzger
mfmetzger@centrecountypa.gov

/s/ Michael Wiseman

Michael Wiseman